IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| NET NAVIGATION SYSTEMS, LLC, <br><br>　　Plaintiff, <br><br>v. <br><br>CISCO SYSTEMS, INC. AND AT&T INC., <br><br>　　Defendants. | Civil Action No. 4:11-cv-660 <br><br>JURY TRIAL DEMANDED |
| NET NAVIGATION SYSTEMS, LLC, <br><br>　　Plaintiff, <br><br>v. <br><br>HUAWEI TECHNOLOGIES CO., LTD.; HUAWEI TECHNOLOGIES USA INC., and FUTUREWEI TECHNOLOGIES, NC., <br><br>　　Defendants. | Civil Action No. 4:11-cv-662 <br><br>JURY TRIAL DEMANDED |
| NET NAVIGATION SYSTEMS, LLC, <br><br>　　Plaintiff, <br><br>v. <br><br>ALCATEL-LUCENT USA INC., and AT&T INC. <br><br>　　Defendants. | Civil Action No. 4:11-cv-663 <br><br>JURY TRIAL DEMANDED |

**NET NAVIGATION SYSTEMS, LLC'S REPLY IN SUPPORT OF ITS
CLAIM CONSTRUCTION BRIEF**

**PLAINTIFF'S REPLY IN SUPPORT OF
ITS CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT ............................................................................................................... 1

       1. Preambles of claims 1, 29, and 31 / "network routing apparatus" / "network data" ..................................................... 1

          a. Preambles Are Not Limitations ....................................... 1

          b. Claims 29 and 31 Are Not Limited To ATM Switches ............................................................................ 3

       2. "in order to control congestion of the [switch/apparatus]" ......................... 4

   B. U.S. Patent No. 6,307,860 ............................................................................... 6

       1. The Court Should Reject Defendants' Confusing And Unnecessary Construction of the Terms "First Circuit" and "First Processor" ..................................................................... 6

       2. The Court Should Reject Defendants' Attempt To Import into the Terms "Second Circuit" and "Second Processor" Negative Limitations From the Specification That Are Not Part of the Claims ....................................................................... 6

       3. Defendants' Attempt to Construe "Data Flow" Based on the Intrinsic Evidence from an Unrelated Patent is Improper ................... 9

   C. U.S. Patent No. 6,434,145 ............................................................................... 9

       1. The Court Should Not Construe "At Least Two of the Frames are Processed by Two Different Processing Channels" Where There Is No Clear or Unequivocal Disavowal in Prosecution ........................................................... 9

       2. The Court Should Not Import Limitations from the Specification into the Term "Data Flow" Which Are Contrary to the Specification and Irrelevant to the Asserted Claims .................................................................................. 13

   D. U.S. Patent No. 6,625,122 ............................................................................... 13

       1. "Data Flow" / "Flow" ................................................................. 13

       2. bandwidth / bandwidth requirement / bandwidth to be given .................. 14

III. CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
    289 F.3d 801 (Fed. Cir. 2002) ............................................................................... 1, 3

*CCS Fitness v. Brunswick Corp.*,
    288 F.3d 1359 (Fed. Cir. 2002) ............................................................................. 8, 14

*Comark Commc'ns, Inc. v. Harris Corp.*,
    156 F.3d 1182 (Fed. Cir. 1998) ............................................................................. 2

*Eaton Corp. v. Rockwell Int'l Corp.*,
    323 F.3d 1332 (Fed. Cir. 2003) ............................................................................. 3

*Fractus, S.A. v. Samsung Elecs. Co.*,
    2010 U.S. Dist. LEXIS 134502 (E.D. Tex. 2010) ................................................. 4

*Goldenberg v. Cytogen, Inc.*,
    373 F.3d 1158 (Fed.Cir.2004) ............................................................................... 9

*i4i L.P. v. Microsoft Corp.*,
    589 F.3d 1246 (Fed. Cir. 2009) ............................................................................. 7

*In re Katz Interactive Call Proc. Patent Litig.*,
    639 F.3d 1303 (Fed. Cir. 2011) ............................................................................. 5

*K-2 Corp. v. Salomon S.A.*,
    191 F.3d 1356 (Fed. Cir. 1999) ............................................................................. 15

*KCJ Corp. v. Kinetic Concepts, Inc.*,
    223 F.3d 1351 (Fed. Cir. 2000) ............................................................................. 9

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004) ............................................................................... 8, 13

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
    474 F.3d 1323 (Fed. Cir. 2007) ............................................................................. 5

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ............................................................ 8, 9, 11

*Purdue Pharma L.P. v. Endo Pharmaceuticals Inc.*,
    438 F.3d 1123 (Fed.Cir.2006) ............................................................................... 12

*SanDisk Corp. v. Memorex Prods., Inc.*,
    415 F.3d 1278 (Fed. Cir. 2005) ............................................................................. 11, 12

*Seachange Int'l, Inc. v. C-COR Inc.*,
   413 F.3d 1361 (Fed. Cir. 2005)..................................................................................12

*Superguide Corp. v. DirecTV Enterprises, Inc.*,
   358 F.3d 870 (Fed. Cir. 2004).......................................................................................7

*Tandon Corp. v. United States Int'l Trade Comm'n*,
   831 F.2d 1017 (Fed. Cir. 1987).....................................................................................4

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
   299 F.3d 1327 (Fed. Cir. 2002)...................................................................................11

**OTHER AUTHORITIES**

*Cisco Systems' Dictionary of Internetworking Terms and Acronyms* (Ex. E) at 80........................5

Plaintiff Net Navigation Systems, L.L.C. ("Net Navigation" or "Plaintiff") hereby files its Reply in Support of its Opening Claim Construction Brief.

## I. INTRODUCTION

As explained in its Opening Brief, Net Navigation has proposed constructions that assist the jury by providing useful meanings for technical claim terms, and that are consistent with the full scope of those terms as understood by those skilled in the art. The jointly proposed constructions of the defendants in the -660, -662, and -663 cases (collectively, "Defendants"), on the other hand, improperly attempt to rewrite the claims with new limitations, or assign definitions that are not consistent with the ordinary meaning of the disputed terms. The Court should therefore adopt Net Navigation's constructions and reject Defendants' proposed constructions.

## II. ARGUMENT

### A. U.S. Patent No. 5,901,147

#### 1. Preambles of claims 1, 29, and 31 / "network routing apparatus" / "network data"

The parties' disputes (both as to limiting effect of the preambles, and to the proper construction of the terms "network routing apparatus" and "network data") center on whether all three asserted claims should be construed to cover only ATM switches. Because claim 1 covers ATM switches and claims 29 and 31 explicitly do not, the Court should reject Defendants' invitation to arbitrarily limit claims 29 and 31 to ATM switches.[1]

##### a. Preambles Are Not Limitations

The Federal Circuit has held that "a preamble is not limiting where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (internal quotations and citation omitted). Here, the preambles use

---

[1] Defendants previously challenged these limitations as lacking enablement, but have now withdrawn those objections. Defendants' Responsive Claim Construction Brief ("Resp. Br.") at fn. 9.

**PLAINTIFF'S REPLY IN SUPPORT OF**
**ITS CLAIM CONSTRUCTION BRIEF**  1

classic purposive language, and recite no essential structure that does not appear in the bodies of the claims. For example, the preamble to claim 1 states "[a] method for processing cells in an ATM switch", but the body of claim 1 describes a structurally complete invention, including "to control congestion of the switch." '147 patent, Col. 29: 38-47. Likewise, the preambles of claims 29 and 31 recite "[a] method for processing network data in a network routing apparatus" and "[a] network routing apparatus", respectively, but the body of **both** those claims defines a structurally complete invention, including the limitation "in order to control congestion of the apparatus." *See, id.* at 34:2-3; 34:20-21. The claims use the preambles only to state a purpose or intended use for the invention, and thus are not limiting.

Defendants argue that the preambles are limiting because they provide "context" to the method claims. Resp. Br. at 5. Defendants argue "none of the method steps refer to networks, networking, or any analogous concepts that might provide context." *Id*. This argument must rejected, however, as claim 1 specifically includes the limitation "to control congestion of the switch," and claim 29 includes the limitation "in order to control congestion of the apparatus," both of which provide the required context that the claims cover network devices. '147 patent, Col. 29: 47; 34:2-3. Notably, claim 31 is not a method claim, but an *apparatus* claim, and Defendants' argument has no application as to that claim.

Next, Defendants argue that "the key aspect of the specification would be lost unless the preambles are construed to limit the claimed inventions to ATM." Resp. Br. at 6. This argument must be rejected, however, as claim 1 is limited to ATM devices *regardless* of the preamble, as the parties agree that the term "cells", which appears in the body of claim 1, is limited to ATM switches. However, *there are no limitations* in claim 29 or claim 31 – not even in the respective preambles – that would suggest that these claims should be limited to ATM switches, and to so limit them is to ignore basic tenets of claim construction. *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998) ("The doctrine of claim differentiation create[s] a presumption that each claim in a patent has a different scope.")

Lastly, Defendants argue that the preambles should be construed as limitations because

they provide antecedent basis for limitations in the body of the claims. As in *Eaton*, cited by Defendants, "[w]hen limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble *may* act as a necessary component of the claimed invention." *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003) (emphasis added). This is an instance, however, where the preambles *do not* act as a necessary component. Indeed, there is nothing "necessary" about the limitations "[a] method for processing network data in a network routing apparatus" or "[a] network routing apparatus". These limitations merely state "an intended use for the invention." *Catalina Mktg*, 289 F.3d at 808. As a result, the Court should find that the preambles are not limiting.

### b. Claims 29 and 31 Are Not Limited To ATM Switches

Even if the Court chooses to construe the preambles of claims 29 and 31 – and it should not – the Court should reject Defendants' attempts to restrict claims 29 and 31 to cover only ATM switches. Defendants' proposed constructions may serve its non-infringement position (or to otherwise limit damages), but are in no way consistent with how one having ordinary skill in the art would understand these terms. For example, Defendants' proposed construction of "network data" is not supported by the intrinsic evidence, nor does such an easily understood term require such a convoluted construction. Significantly, Defendants' proposed construction of the similar "data flow" as being "an ordered group of related data units" for the '145 patent suggests that Defendants themselves know this to be true. It is likely for this reason that Defendants chose to entirely ignore Net Navigation's assertion that the terms "network data" and "network routing apparatus" should be given their plain and ordinary meaning.

More troubling, Defendants fail to address claim differentiation as applied to these claims. Net Navigation showed that claims 1 and 29 differ only by the fact that claim 1 is limited to ATM switches, and claim 29 is not. By improperly limiting claim 29 to ATM switches, the Defendants' construction makes claim 29 *identical* in scope to claim 1. "There is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims. To the extent that the absence of such difference in meaning and scope would

make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant." *Tandon Corp. v. United States Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987). Claim differentiation precludes Defendants' position and their failure to address this argument is telling.[2]

Next, Defendants argue that the invention of the '147 patent is somehow unique to ATM technology, based on "idiosyncratic ATM features" – but this is a red herring. Defendants correctly point out that the invention of the '147 patent tracks the available capacity of a shared memory. Resp. Br. at 9. But, Defendants veer off course by alleging that only network data having fixed sizes – such as ATMS cells – can be monitored. *Id.* Critically, there is nothing in any of the asserted claims requiring that the data be "counted," as Defendants allege. Indeed, other claims of the '147 patent that are *not* being asserted require the use of a class counter. *See*, Cl. 23 ("An ATM switch comprising: … a class counter table for storing a class counter for each class, wherein the class counter is a current number of cells in each class…."). This fact serves to undermine Defendants' argument that invention of the '147 is limited in such a way as to require that ATM cells be counted, as it is readily apparent that only *one embodiment* requires that ATM cells be counted. The asserted claims, in contrast, merely require that the region ID "identifies" the region containing the current amount of data. '147 patent, col. 33:28-29; 34:16-17. Other protocols, such as Ethernet, that use variable-size frames can be "identified." Thus, Defendants' argument that the invention of the '147 patent only applies to ATM switches must be rejected.

### 2. "in order to control congestion of the [switch/apparatus]"

Once again, Defendants fail to explain why this term requires any construction. The term "congestion" is easily understood, and the Court should adopt its plain and ordinary meaning. *See e.g., Fractus, S.A. v. Samsung Elecs. Co.*, 2010 U.S. Dist. LEXIS 134502, *91 (E.D. Tex.

---

[2] Instead, Defendants argue that the express statement in the specification that the invention is not limited to ATM switches "could support any undisclosed technology it cared to assert is covered by the claims", but this rings false. The invention plainly – indeed explicitly – covers network routing technology. This is not "any undisclosed technology", but the precise technology covered by the patent.

**PLAINTIFF'S REPLY IN SUPPORT OF**
**ITS CLAIM CONSTRUCTION BRIEF**      4

2010). To the extent that the term requires construction, Defendant Cisco fails to address the fact that its ***own dictionary*** defines "congestion" as "[t]raffic in excess of network capacity." *Cisco Systems' Dictionary of Internetworking Terms and Acronyms* (Ex. E) at 80.[3]

Instead, Defendants propose a construction that reads out a preferred embodiment. Resp. Br. at 10. Defendants allege that the specification discloses two embodiments: (1) an embodiment where the thresholds vary inversely with the total number of cells in all of the queues; and (2) an embodiment where the thresholds vary inversely with the each *class* of queue. *Id.* "Defendants' [proposed] construction properly reflects that claim 1 applies to [only] the first embodiment…." *Id.* Defendants' argument must be rejected, however, as claims should never be construed to read out a preferred embodiment. *In re Katz Interactive Call Proc. Patent Litig.*, 639 F.3d 1303, 1324 (Fed. Cir. 2011) ("there is a strong presumption against a claim construction that excludes a disclosed embodiment.") Indeed, a construction "that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct." *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007)). Nothing in the language of the claims suggests that the claim term "in order to control congestion of the" switch/apparatus is choosing one or the other of these embodiments.

Defendants argue that claim 1 applies to the first embodiment, and that un-asserted claim 9 applies to the second embodiment. Resp. Br. at 10-11. This argument must be rejected, however, as claim 9 ***depends upon claim 1*** and serves only to further limit the embodiments covered by claim 1. *See*, '147 patent, Cl.9. As Defendants concede, claim 9 "references the embodiment where queues are subdivided into classes." Resp. Br. at 11. But, because claim 9 depends upon claim 1, claim 1 must necessarily also cover *at least* this embodiment. It is literally impossible for claim 9 to encompass an embodiment that claim 1 does not. Thus, Defendants' proposed construction must be rejected, as it would read out an embodiment that Defendants themselves concede is covered by claim 1.

---

[3] All references to "Ex." refer to the exhibits attached to the Declaration of Brian H. VanderZanden in support of Net Navigation's Opening Claim Construction Brief.

**PLAINTIFF'S REPLY IN SUPPORT OF**
**ITS CLAIM CONSTRUCTION BRIEF**      5

### B. U.S. Patent No. 6,307,860

#### 1. The Court Should Reject Defendants' Confusing And Unnecessary Construction of the Terms "First Circuit" and "First Processor"

Defendants' constructions for the terms "first circuit" and "first processor" should be rejected. As Net Navigation demonstrated in its opening brief, Defendants' constructions for these terms are nothing more than ambiguous restatements of some, but less than all, limitations already recited for these terms within the claim language itself. *See* Opening Br. at 13-15. The purpose of the terms "first" and "second" is to distinguish the "first circuit/processor" elements from the "second circuit/processor" elements recited later in the asserted claims. Defendants' brief is largely silent regarding the "first circuit" term, except allege that Net Navigation's opening brief supposedly "did not dispute" that the "first" circuit or processor be "software programmable." Resp. Br. at 15. Not so; whether or not the first circuit is software programmable is not at issue because Defendants' construction does not require software programmability for the first circuit, their construction requiring only that it "determines how data are to be transformed for transmission."

#### 2. The Court Should Reject Defendants' Attempt To Import into the Terms "Second Circuit" and "Second Processor" Negative Limitations From the Specification That Are Not Part of the Claims

Defendants attempt to import a negative limitation, "not software programmable," onto the terms "second processor" and "second circuit." Net Navigation's construction recognizes that the simple terms "second circuit" and "second processor," unrelated to whether or not something is programmable under the plain meaning of the term, merely serve to distinguish the "second circuit/processor" elements from the "first circuit/processor" elements.

The very language of the specification introducing such terms, cited by Defendants, is complete silent regarding software programmability. Defendants explicitly state:

> The specification explains the distinction between a 'first' processor and a 'second' processor. The first processor determines how data are to be transformed for transmission. **The second processor transforms data at commands from the first processor**.

**PLAINTIFF'S REPLY IN SUPPORT OF
ITS CLAIM CONSTRUCTION BRIEF**     6

Resp. Br. at 13-14 (citing '860 patent at 1:64-2:1) (internal quotation marks omitted). Because ***nothing*** in this "basic distinction" (*id.*) relates to "software programmability" of any circuit or processor, the specification does not evidence any intent to require that the second circuit be, or not be, software programmable. There is no need to include the quoted language relating to transforming "data at commands from the first processor" in the construction of the terms "second processor/circuit" because those requirements are explicit limitations of the asserted claims. *See, e.g.,* '860 patent at Claim 1. The cited passage illustrates the error of Defendants' construction and the propriety of Net Navigation's construction.

Defendants cite several statements relating to a preferred embodiment in an attempt to justify reading in the negative "not software programmable" limitation. However, every one of the citations relied upon by Defendants includes ***permissive***, rather than restrictive, language indicating that the "second circuit" may be, but need not necessarily is, software programmable:

> [*S*]*ome* network processors are implemented as dedicated processors…. These processors are ***sometimes*** hardwired for the specific tasks, protocols and standards….
>
> There also exist more intelligent processors adaptable to a wide range of systems having different tasks, protocols, and standards. ***Examples*** are software programmable processors…
>
> However, multiple software programmable processors can make the device expensive.
>
> Because the second processor can be inexpensive, the entire network processor can be inexpensive compared to devices with multiple software programmable processors.

Resp. Br. at 14-15 (quoting '860 patent) (emphasis added). Indeed, the Federal Circuit has held that "[t]he specification's use of permissive language … does not clearly disclaim systems lacking [benefits recited in the specification]." *i4i L.P. v. Microsoft Corp.*, 589 F.3d 1246, 1259 (Fed. Cir. 2009).

Furthermore, these passages do not distinguish the '860 patent from the prior art based on the use of "non-software programmable processors." Instead, the "basic distinction" is a "first processor determines how data are to be transformed for transmission" and a "second processor transforms data at commands from the first processor." '860 patent at 1:64-2:1. *See Superguide*

**PLAINTIFF'S REPLY IN SUPPORT OF**
<u>**ITS CLAIM CONSTRUCTION BRIEF**</u>     7

*Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004) (cautioning, "it is important not to import into a claim limitations that are not part of the claim").

Further, the actual holding of the *single case cited by Defendants* in support of their position involved an explicit ***rejection*** by the Federal Circuit of a similar attempt to import a limitation into the claim from the preferred embodiment. *See CCS Fitness v. Brunswick Corp.*, 288 F.3d 1359, 1365-1368 (Fed. Cir. 2002). At issue in *CCS Fitness* was whether the word "member" should be construed according to a plain meaning definition from a dictionary, or whether the term was further limited based on drawings depicting the preferred embodiment in the specification. *Id.* at 1367. Here, as in *CCS Fitness*, the "specification never requires" that the second circuit not be software programmable, nor does the specification "clearly assign a unique definition" to the word "second." *Id.* at 1367. As Defendants' own cited authority demonstrates, the Court here should reject Defendants' attempt to limit the claims to a preferred embodiment.

Defendants also ignore the teachings of *Phillips* in an improper attempt to cabin claim differentiation and the use of language in other claims as a tool for construction to those instances in which a dependent claim adds a single limitation. Although strongest in such situations[4], use of language in other claims, including claims that differ in other respects from the claim at issue often informs the meaning of other claims. *See, e.g., Phillips v. AWH Corp.*, 415 F.3d 1303, 1310 (Fed. Cir. 2005) (en banc). In *Phillips,* the claim construction dispute centered on whether or not the term "baffles" recited in claim 1 included functional limitations that were explicitly recited in other claims, but which were not included in claim 1 of that patent. *Id*. at 1324. The Federal Circuit determined that claim 1 did not include the additional limitation, in part because another independent claim explicitly recited the limitation. *Id.* at 1324-25 ("That limitation would be unnecessary if persons of skill in the art understood that the baffles inherently served such a function."). Here, dependent claim 13 of the '860 patent includes

---

[4] *See, e.g., Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004)

**PLAINTIFF'S REPLY IN SUPPORT OF**
<u>**ITS CLAIM CONSTRUCTION BRIEF**</u>       8

explicit language requiring software programmability. This inclusion implies that other claims not explicitly reciting the limitation do not include that limitation. Just as in *Phillips*, the explicit limitation of claim 13 would be unnecessary if persons skilled in the art inherently understood the term "second circuit" to mean "not software programmable."

### 3. Defendants' Attempt to Construe "Data Flow" Based on the Intrinsic Evidence from an Unrelated Patent is Improper

Defendants do not provide any argument supporting their construction of the term "data flow" other than noting that the term also appears in the unrelated '145 patent and summarily referring to that section of their brief. Resp. Br. at 17. While disparaging Net Navigation's use of extrinsic evidence, Defendants' entire argument for the '860 patent is based upon the "intrinsic record" of the '145 patent—a patent unrelated to the '860 patent. *Id.* at 25-27. However, the '860 patent is not related to the '145 patent, and therefore the intrinsic record of the '145 patent is irrelevant. *Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1167-68 (Fed.Cir.2004) (requiring "formal relationship or incorporation during prosecution" of the patent at issue before cross-use of intrinsic record is allowed). The '860 patent is not formally related to, and indeed precedes, the '145 patent, precluding an incorporation during prosecution. Accordingly, Defendants have no relevant evidence supporting their construction for the '860 patent.

## C. U.S. Patent No. 6,434,145[5]

### 1. The Court Should Not Construe "At Least Two of the Frames Are Processed by Two Different Processing Channels" Where There Is No Clear or Unequivocal Disavowal in Prosecution

---

[5] Presently, the parties differ regarding the proper construction of the term "frame." Net Navigation's construction of this term is correct based on the intrinsic and extrinsic evidence. Defendants' construction improperly requires transmitting multiple cells or packets in a single "data unit." Defendants state that they are willing to construe the term as "a data unit for transmitting an encapsulated cell or packet." This construction is acceptable if "an" is given the customary definition in Patent Law of "one or more." *See KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000) ("an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more'"). As such, Net Navigation has proposed that this term be construed as "a data unit for transmitting one or more encapsulated cells or packets." Net Navigation relies upon the arguments made in its opening brief and reserves the right to present additional argument on this term at the Hearing in the event the parties are unable to reach agreement.

**PLAINTIFF'S REPLY IN SUPPORT OF
ITS CLAIM CONSTRUCTION BRIEF** 9

Defendants ask the Court to import a limitation into the phrase "at least two of the frames are processed by two different processing channels" requiring that the frames from a single flow be processed simultaneously. Notably, nothing in the claim term itself relates to simultaneous processing. Defendants attempt to engraft this extraneous limitation based upon a single sentence from the prosecution history of the '145 patent. However, examination of the full context of the prosecution demonstrates that the statement was not a clear disavowal of claim scope requiring simultaneous processing of frames from the same data flow by different processing channels. The language from the prosecution history is subject to multiple reasonable interpretations and is, in any event, vague regarding the scope of any disavowal. Consequently, Defendant's construction should be rejected.

Defendants attempt to rely upon a statement, in isolation, in which the applicant distinguished prior art from Claim 1 of the '145 patent. However, the distinctions did not involve parallel or simultaneous processing. During prosecution, the examiner cited the '860 patent (discussed above) during against the '145 patent application. In response, the patentee distinguished the '860 patent's disclosure from the '145 patent application by explaining that, in the '860 patent, each flow was assigned to one, and only one, processing channel:

> Applicants respectfully submit that the Joffe ['860] patent illustrates in FIG. 1 (which is cited in the above rejection), an ATM switch 120 that is coupled to Slicers 140.0-140.3, and each of Slicers 140.0-140.3 is **respectively coupled** to the channels CH 0-CH 3 that are labeled 150.0-150.3

Resp. Br., Ex. 4 at 15 (emphasis added). The patentee further distinguished the prior art '860 patent from the '145 patent application because the '860 patent had "one-to-one correspondence" between a data flow and a processing channel (*i.e.*, each data flow is assigned to one and only one processing channel):

> **One-to-one correspondence between data flows and channels** is made clear in the Joffe patent in FIG. 1, and this correspondence is described at column 4, lines 4-8, wherein it is stated "In FIG. 1, **the data flow** between each slicer 140.x and the corresponding MAC 130.x **is controlled by a corresponding channel**150.x (also called channel "x" below, i.e. channel 0, 1, 2 or 3). The channels 150 execute commands from microcontroller 160 ..."

*Id.* (emphasis added). The applicant then explained that the prior art '860 patent requires that

**PLAINTIFF'S REPLY IN SUPPORT OF
ITS CLAIM CONSTRUCTION BRIEF**       10

each data flow be processed by a single channel rather than allowing frames from a single data flow be processed by more than one channel:

> The Joffe patent fails to disclose or suggest that a slicer 140.x can provide data to a non-corresponding channel150.y and also fails to disclose or suggest that a channel150.y can provide data to a non-corresponding MAC 130.x. To summarize, the Joffe patent (which is the only reference cited by the Examiner) **discloses that each data flow is processed by a single channel**, and the Joffe patent **fails to disclose or suggest that frames of a single data flow be processed by multiple processing channels**.

*Id.* (emphasis added). The applicant then stated that the amended claim "explicitly requires that two frames of a single flow are processed by at least two different processing channels." *Id.* Consequently, the distinction repeatedly emphasized by the patentee was not *simultaneous* processing of frames from the same flow, but instead that some frames in the same flow were processed by different processing channels. This distinction is fully recognized in Net Navigation's construction, which properly requires that "at least one frame in the flow is processed by a different processing channel than at least one other frame in the flow."

The Federal Circuit has repeatedly recognized that the prosecution history "often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Phillips*, 415 F.3d at 1317. In particular, Defendants must establishing a disclaimer that is "clear and unmistakable" and not "subject to more than one reasonable interpretation." *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1287 (Fed. Cir. 2005). Moreover, the disclaimer must use "words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1327 (Fed. Cir. 2002).

Defendants rely upon a single ambiguous sentence from the prosecution history out of context: "Simultaneous processing of frames **that belong to the same flow** by different processing channels as required by Claim 1 is nowhere disclosed or suggested by the Joffe patent." Resp. Br., Ex. 4 at 16 (emphasis original). The patentee repeatedly emphasized, and here even bolds and underlines, the distinction that frames from the same flow be processed by different processing channels. Indeed, Defendants themselves contend that simultaneous processing is not a distinction over the prior art, stating that "the concept of parallel processing

**PLAINTIFF'S REPLY IN SUPPORT OF
ITS CLAIM CONSTRUCTION BRIEF**      11

was well known, including in the context of networks." Def. tutorial at slide 53. The introductory clause of this sentence merely acknowledges that Claim 1 generally relates to the parallel processing of frames, and then states the emphasized distinction, bolded and underlined by the applicant, that the '860 patent does not disclose processing frames from the same flow by different processing channels. Because the meaning is at least subject to different "reasonable interpretations," this vague sentence is insufficient to demonstrate a "clear and unambiguous disavowal of claim scope." *SanDisk,* 415 F.3d at 1287.

Defendants' also improperly seek to apply the statement to claims not subject to any disavowal. The statement itself makes clear that it only relates to the limitations "**as required by claim 1**" Resp. Br., Ex. 4 at 16 (emphasis added). Importantly, claim 14 and claim 1 do not recite the same limitations, and in particular, Claim 14 does require "parallel" or "simultaneous" processing. Defendants argue that "the phrase 'in parallel' means simultaneous processing." Resp. Br. at 24. However, the limitation of "processing data in parallel" appears **only** in Claim 1, **not** in Claim 14. *Compare* ['860 patent] at Claim 1 ("processing data in parallel by two or more of the processing channels") *with* Claim 14 (reciting "dispatching data… to multiple processing channels" with no requirements that the dispatching be in "parallel"). It is incorrect to apply a purported disclaimer related to the term "parallel" to another claim not containing that term. *See Purdue Pharma L.P. v. Endo Pharmaceuticals Inc*., 438 F.3d 1123, 1136-1137 (Fed.Cir.2006) (reversing a construction adding "extraneous limitations" based on prosecution history, stating, "Without any specific claim language to interpret, however, the trial court impermissibly imported a limitation into the claims"); *Seachange Int'l, Inc. v. C-COR Inc.*, 413 F.3d 1361, 1368 (Fed. Cir. 2005) ("different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope"). Thus, Defendants' arguments relating to prosecution disclaimers are, at a minimum, inapplicable to Claim 14.

### 2. The Court Should Not Import Limitations from the Specification into the Term "Data Flow" Which Are Contrary to the Specification and Irrelevant to the Asserted Claims

Net Navigation's construction is taken from Defendant Cisco's definition for this term from Cisco's published dictionary of networking terms. Defendant's construction is incorrect for two reasons. First, the claim term recites the word "data," but the plain meaning of the word "data" is not limited to "frames." Notably, to the extent Defendants' draw a distinction between "frames" and other data units, such as packets, that distinction is inconsistent with the specification of the '145 Patent, which references both "packets" ('145 Patent at 10:6) and "framds." (*Id.* at 10:7). Second, certain dependent claims add limitations relating to preserving the order of data. *See, e.g., id*. at dependent claims 3 and 17 (adding the limitations for transmitting data "in the same order in which the data were received") Although Defendants assert that this is a "key concept" of the '145 patent (Def's. br at 26), ordering is never mentioned in independent claims 1 and 14. Because the "order" limitation is the only limitation added by dependent claim 3, construing claim 1 to include the limitation is a violation of the doctrine of claim differentiation when it is "at its strongest." *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) ("[W]here the limitation that is sought to be 'read into' an independent claim already appears in a dependent claim, the doctrine of claim differentiation is at its strongest."). Defendants' construction, which attempts to hide from the plain meaning of the term evidenced by Defendant Cisco's own published definition of the term, is wrong.[6]

### D. U.S. Patent No. 6,625,122

#### 1. "Data Flow" / "Flow"

Defendants argue that the terms "data flow" and "flow" should be given constructions "contrary to the conventional meaning" of those terms because the patentee acted as his "own

---

[6] Defendants' chief concern appears to be that Plaintiff's definition does not include the word "related." Relationship between the data units is implied by the word "stream" in Plaintiff's definition. Nevertheless, to address this concern, Net Navigation would modify Defendant Cisco's published definition and construe this term as "stream of related data traveling between two devices in a network."

**PLAINTIFF'S REPLY IN SUPPORT OF
ITS CLAIM CONSTRUCTION BRIEF**      13

lexicographer." Resp. Br. at 28. To act as its own lexicographer, a patentee must "clearly set forth a definition of the disputed claim term" other than its plain and ordinary meaning. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). It is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments, the patentee must "clearly express an intent" to redefine the term." *Id.* The relevant portion of the specification, however, demonstrates that the patentee did not clearly express intent to give the term "data flow" a definition beyond its plain and ordinary meaning. Instead, the patentee merely explains that the term "data flow" should be defined broadly, and explicitly cites examples of specific types of data flows. '122 patent, col. 6:26-36 (emphasis added). Moreover, the term "data flow" appears in the '122 patent, the '860 patent, and the '145 patent. Defendants seek a different definition of "data flow" in each instance. All three patents, of course, relate to networking technology, and one having ordinary skill in the art would not define the relatively straight-forward term "data flows" differently in each context. As a result, Net Navigation's construction of "stream of data traveling between two devices in a network" should be consistently adopted for each of the three patents.

Lastly, Defendants are incorrect in stating that Net Navigation argues that the term "data flows" should be construed to exclude IP packets having a predetermined source and a predefined destination address. Resp. Br. at 28-29. Indeed, the parties are in agreement on this point. Thus, regardless of what definition of "data flows" the Court adopts, it should include IP packets having a predetermined source and a predefined destination address.

### 2.    bandwidth / bandwidth requirement / bandwidth to be given

Defendants argue that "bandwidth" should be given a construction contrary to its conventional meaning because the patentee acted as his own lexicographer. Resp. Br. at 29. To act as its own lexicographer, a patentee must "clearly express an intent" that a term be given a construction different from its plain and ordinary meaning. *CCS Fitness*, 288 F.3d at 1366. Here, the patentee did not express a clear intent to redefine "bandwidth." The portion of the specification cited by Defendants only suggests that bandwidth is *measured* in bits-per-second, a

point explicitly made later in the specification: "here the bandwidth is measured in bits per second…." '122 patent, at col. 2:17. Defendants' invitation to assign "bandwidth" a construction contrary to its conventional meaning should be rejected.

Next, with regard to the term "bandwidth requirement", Net Navigation cannot agree to construe that term as "specified bandwidth." Indeed, Defendants' proposal only serves to undermine their position that the term "bandwidth" requires a construction at all, as they concede that "bandwidth" is not so confusing to the jury that it would be appropriate to use it as a part of a construction of another term – here the term "bandwidth requirement." Net Navigation reasserts that the terms "bandwidth" and "bandwidth requirement" would be readily understood by a jury, and thus do not require a construction.

Lastly, Defendants' proposed construction of "bandwidth to be given" improperly includes the requirement of a "percentage", which appears to be in one embodiment. That requirement, however, was never included in the claims themselves. As a result, the Court should reject Defendants' invitation to add this limitation. "Courts do not rewrite claims; instead, we give effect to the terms chosen by the patentee." *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999).

## III. CONCLUSION

Net Navigation respectfully requests that the Court adopt Net Navigation's proposed claim constructions and reject Defendants' erroneous constructions for the reasons stated herein.

| | |
|---|---|
| Dated: October 26, 2012 | */s/ M. Brett Johnson* |
| | M. Brett Johnson |
| | State Bar No. 00790975 |
| | LEAD ATTORNEY |
| | Steven R. Daniels |
| | State Bar No. 24025318 |
| | M. Vanessah Melton |
| | State Bar No. 24028818 |
| | Brian VanderZanden admitted *Pro Hac Vice* |
| | FARNEY DANIELS LLP |
| | 800 S. Austin Ave., Suite 200 |
| | Georgetown, Texas 78626 |
| | Telephone: (512) 582-2828 |
| | Facsimile: (512) 582-2829 |
| | |
| | James C. Tidwell |
| | State Bar No. 20020100 |
| | WOLFE, TIDWELL & MCCOY, LLP |
| | 320 North Travis Street, Suite 205 |
| | Sherman, TX 75090 |
| | Telephone: (903) 868-1933 |
| | Facsimile: (903) 892-2397 |
| | |
| | **ATTORNEYS FOR PLAINTIFF** |
| | **NET NAVIGATION SYSTEMS, LLC.** |

### CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2012, I electronically filed the foregoing filing with the Clerk of Court using the CM/ECF system which will send notification of such filing *via* electronic mail to all counsel of records.

          */s/ M.Brett Johnson*
          M. Brett Johnson